IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JOHN P. DUNBAR,<br><br>                Plaintiff,<br><br>vs.<br><br>AIRBNB, INC.,<br><br>                Defendant. | Civ. No. 19-00648 JMS-WRP<br><br>ORDER GRANTING DEFENDANT AIRBNB, INC.'S MOTION TO COMPEL ARBITRATION, ECF NO. 4, AND DISMISSING ACTION |

**ORDER GRANTING DEFENDANT AIRBNB, INC.'S MOTION TO COMPEL ARBITRATION, ECF NO. 4, AND DISMISSING ACTION**

**I.  INTRODUCTION**

Airbnb, Inc. ("Defendant") moves to compel arbitration and to stay litigation of this action.  ECF No. 4 at PageID #14-15.  For the reasons discussed below, the motion is GRANTED.  Further, because the entire dispute is subject to arbitration, the court DISMISSES the action (rather than staying it).

**II.  BACKGROUND**

**A.     Factual Background**

For purposes of this motion, the pertinent facts are undisputed.  John P. Dunbar ("Plaintiff") operated a bed and breakfast as a registered Airbnb host.  ECF No. 4-1 at PageID #23; ECF No. 1 at PageID #2.  Plaintiff alleges that Defendant defamed him when, beginning in December 2017, it "posted a [false]

statement on the Internet and disseminated same to multiple third persons" that

Plaintiff was "removed [as an Airbnb] host per domestic violence." ECF No. 1 at

PageID #2-3 (emphasis removed).

When Plaintiff first registered to become a host in 2012, he consented

to Defendant's terms of service in effect at that time. ECF No. 4-1 at PageID #24;

*see* ECF No. 9 at PageID #117, 120. This 2012 version of the terms of service

included an arbitration provision[1] within a section titled "Dispute Resolution."

ECF No. 4-7 at PageID #66. The 2012 version, however, contained no separate

clause specifying who would decide questions of arbitrability (a "delegation

clause"). *See id.* The 2012 version also included a "changes" provision permitting

Plaintiff to reject any future changes to the dispute resolution section. *Id.*[2]

---

[1] The 2012 arbitration provision states: "You and Airbnb agree that any dispute, claim or controversy arising out of or relating to these Terms or the breach, termination, enforcement, interpretation or validity thereof, or to the use of the Services or use of the Site or Application (collectively, 'Disputes') will be settled by binding arbitration, except that each party retains the right to seek injunctive or other equitable relief in a court of competent jurisdiction to prevent [intellectual property infringement]." ECF No. 4-7 at PageID #66.

[2] The 2012 "changes" provision states: "[I]f Airbnb changes this 'Dispute Resolution' section after the date you first accepted these Terms (or accepted any subsequent changes to these Terms), you may reject any such change by sending us written notice (including by email to terms@airbnb.com) within 30 days of the date such change became effective . . . . By rejecting any change, you are agreeing that you will arbitrate any Dispute between you and Airbnb in accordance with the provisions of this 'Dispute Resolution' section as of the date you first accepted these Terms (or accepted any subsequent changes to these Terms)." ECF No. 4-7 at PageID #66.

Defendant updated the dispute resolution terms several times after

Plaintiff's initial registration through 2019.  *See* ECF No. 4-2 at PageID #51-52;

ECF No. 4-4 at PageID #55.  Plaintiff consented to each of these updated terms of

service.  *See* ECF No. 4-2 at PageID #52; ECF No. 4-4 at PageID #55; ECF No. 9

at PageID #117, 120.

The 2017 version of the terms of service was in effect at the time of

Airbnb's alleged defamation.  *See* ECF No. 4-2 at PageID #52; ECF No. 9 at

PageID #117, 120 (acknowledging that "Plaintiff agreed to the arbitration clause in

general" after earlier quoting the version of the arbitration provision from the 2017

terms of service).  Although other terms had changed, the arbitration provision was

essentially unaltered from the 2012 terms of service.  *Compare* ECF No. 4-7 at

PageID #66, *with* ECF No. 4-8 at PageID #87.[3]  Likewise, the 2017 changes

_____

[3] The 2017 terms of service states in bold font, in part: "**You and Airbnb mutually agree that any dispute, claim or controversy arising out of or relating to these Terms or the breach, termination, enforcement or interpretation thereof, or to the use of the Airbnb Platform, the Host Services, or the Collective Content (collectively, 'Disputes') will be settled by binding arbitration (the 'Arbitration Agreement').**"  ECF No. 4-8 at PageID #87 (reserving the parties' rights to bring in court disputes about intellectual property and emergency injunctive relief in a separate subsection).

section was substantively identical to the 2012 terms of service.  *Compare* ECF

No. 4-7 at PageID #66, *with* ECF No. 4-8 at PageID #88.[4]

      But unlike the 2012 version, the 2017 version added a delegation

clause: "**If there is a dispute about whether this Arbitration Agreement can be**

**enforced or applies to our Dispute, you and Airbnb agree that the arbitrator**

**will decide that issue.**"  ECF No. 9 at PageID #117; *accord* ECF No. 4-8 at

PageID #87 (bold font in original).  And the 2017 terms of service, written in

larger font, also used bold print to emphasize the arbitration provision and

delegation clause.  *See* ECF No. 4-8 at PageID #87.  Moreover, the very beginning

of the terms, also in bold print, states:

> **Please note: Section 19 of these Terms of Service**
> **contains an arbitration clause and class action**
> **waiver that applies to all Airbnb Members.  If you**
> **reside in the United States, this provision applies to all**
> **disputes with Airbnb . . . . It affects how disputes with**
> **Airbnb are resolved.  By accepting these Terms of**
> **Service, you agree to be bound by this arbitration**
> **clause and class action waiver.  Please read it**
> **carefully.**

---

[4] The 2017 version states: "[I]f Airbnb changes this Section 19 ('Dispute Resolution and Arbitration Agreement') after the date you last accepted these Terms (or accepted any subsequent changes to these Terms), you may reject any such change by sending us written notice (including by email) within thirty (30) days of the date such change became effective . . . . By rejecting any change, you are agreeing that you will arbitrate any Dispute between you and Airbnb in accordance with the provisions of the 'Dispute Resolution and Arbitration Agreement' section as of the date you last accepted these Terms (or accepted any subsequent changes to these Terms)."  ECF No. 4-8 at PageID #88.

*Id.* at PageID #68.

The 2017 dispute resolution section purports to afford "a consumer-friendly" arbitration process by adopting the American Arbitration Association's ("AAA") Consumer Arbitration Rules. *Id.* at PageID #87. The terms specify that these rules provide that "[t]he initial filing fee for the consumer is capped at $200," and "[t]he consumer gets to elect the hearing location and can elect to participate live, by phone, [or by] video conference," among other things. *Id.*

The 2017 terms of service departed from AAA rules concerning attorney fees and costs awards. In particular, the consumer is "entitled to seek an award of attorney fees and expenses if [the consumer] prevail[s] in arbitration." *Id.* at PageID #88. On the other hand, Defendant "agrees it will not seek, and hereby waives all rights it may have . . . . to recover attorneys' fees and expenses if it prevails in arbitration," except when "the arbitrator determines that [the consumer's] claim was frivolous or filed for the purpose of harassment." *Id.*

**B.      Procedural Background**

On December 5, 2019, Plaintiff filed a Complaint alleging a single claim of defamation against Defendant. *See* ECF No. 1 at PageID# 2-3. On January 13, 2020, Defendants filed the instant Motion to Compel Arbitration and Stay Litigation, arguing that Plaintiff's defamation claim is subject to arbitration

under the agreed terms of service and the delegation clause requires the arbitrator

to decide if Plaintiff's defamation claim is arbitrable. *See* ECF No. 4. Plaintiff

filed his Opposition on February 10, 2020, claiming that the defamation dispute is

outside the arbitration agreement's scope and the delegation clause is not

enforceable. *See* ECF No. 9. On February 18, 2020, Defendant filed its Reply.

ECF No. 11. A hearing was held on March 2, 2020.[5] ECF No. 12.

## III. <u>DISCUSSION</u>

### A.    The Federal Arbitration Act ("FAA")

An arbitration agreement within the scope of the FAA "shall be valid,

irrevocable, and enforceable," except "upon such grounds as exist at law or in

equity for the revocation of any contract." 9 U.S.C. § 2. And any party "aggrieved

by the alleged . . . refusal of another to arbitrate" may petition a district court for an

order compelling arbitration in the matter provided for in the agreement. *Id.* § 4.

"The FAA 'mandates that district courts *shall* direct the parties to proceed to

arbitration on issues as to which an arbitration agreement has been signed.'"

---

[5] Because Plaintiff is proceeding pro se, the court liberally construes his Complaint and Opposition. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).

*Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (en banc)

(quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)).

Normally, "in deciding whether to compel arbitration, a court must

determine two 'gateway' issues: (1) whether there is an agreement to arbitrate

between the parties;[6] and (2) whether the agreement covers the dispute.'" *Brennan*

*v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter*

*Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). However, "parties may delegate threshold

arbitrability questions to the arbitrator, so long as the parties' agreement does so by

'clear and unmistakable' evidence." *Henry Schein, Inc. v. Archer & White Sales,*

*Inc.*, 139 S. Ct. 524, 530 (2019).[7]

If the delegation clause is clear and unmistakable, "the only remaining

question is whether the particular agreement *to delegate* arbitrability—the

---

[6] Plaintiff "recognized that [he] agreed to the arbitration clause in general." ECF No. 9 at PageID #120. Therefore, this first gateway question is not at issue here.

[7] Under the FAA, "a court may not decide an arbitrability question that the parties have delegated to an arbitrator." *Henry Schein, Inc.*, 139 S. Ct. at 530. This is because "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue." *Id.* at 529.
Here, as discussed below, because the delegation clause is clear and unmistakable, and not unconscionable, the court does not decide the second gateway issue, i.e., "whether the agreement covers the dispute." *Brennan*, 796 F.3d at 1130. That is an issue for the arbitrator.

Delegation [Clause]—is itself unconscionable." *Brennan*, 796 F.3d at 1132 (citing

*Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63 (2010)).

**B.      The Delegation Clause Is Clear and Unmistakable**

To determine "whether the parties agreed to arbitrate a certain matter

(including arbitrability), courts generally . . . should apply ordinary state-law

principles that govern the formation of contracts." *First Options of Chi., Inc. v.*

*Kaplan*, 514 U.S. 938, 944 (1995). When specifically deciding whether an

agreement delegated arbitrability by clear and unmistakable evidence, the court

treats silence or ambiguity about who decides arbitrability as a presumption against

arbitration. *Id.* at 944-45. This is because "[a] party often might not focus upon

that question [of who should decide arbitrability] or upon the significance of

having arbitrators decide the scope of their own powers. *Id.* at 945.

Here, however, the 2017 agreement clearly and unmistakably

specifies that the arbitrator will decide arbitrability questions—"[i]f there is a

dispute about whether this Arbitration Agreement can be enforced or applies to our

Dispute, you and Airbnb agree that the arbitrator will decide that issue." ECF No.

9 at PageID #117; *accord* ECF No. 4-8 at PageID #87. This delegation clause is

neither silent nor ambiguous, and specifically designates the arbitrator to decide

disputes about whether the arbitration agreement is enforceable or applicable (that

8

is, arbitrable).  *See Rent-A-Center*, 561 U.S. at 68-69 (recognizing questions of arbitrability include "whether the [arbitration] agreement covers a particular controversy").

Plaintiff argues the arbitration agreement does not clearly and unmistakably delegate arbitrability to the arbitrator.  Plaintiff focuses on the agreement's *first* sentence, which states that "any dispute, claim or controversy arising out of or relating to these Terms or the breach, termination, enforcement or interpretation thereof, or to the use of the Airbnb Platform, the Host Services, or the Collective Content . . . will be settled by binding arbitration."  *See* ECF No. 9 at PageID #117, 123-24.  But Plaintiff *ignores* the delegation clause itself, which is the very next sentence of the arbitration provision.  *See id.*[8]

Accordingly, the parties' delegation clause must be enforced unless it is unconscionable.

## C. The Delegation Clause Is Neither Procedurally nor Substantively Unconscionable

The only remaining question is whether the delegation clause itself is unconscionable.  *See Brennan*, 796 F.3d at 1132 (citing *Rent-A-Center*, 561 U.S.

---

[8] *Marshall v. Rogers*, 2018 WL 2370700 (D. Nev. May 24, 2018), relied on by Plaintiff, is distinguishable because its agreement did not have a comparable delegation clause.

63).  Unconscionability is determined by reference to applicable state law.  *See*

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) ("[A]greements to

arbitrate [may] be invalidated by generally applicable [state-law] contract

defenses, such as . . . unconscionability.") (citations and quotation marks omitted);

*see also Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213, 1217 (9th Cir. 2008)

("This requires [a court] to consider what is unconscionable and unenforceable

under . . . state law.").

   "Under California law,[9] a contract must be *both* procedurally and

substantively unconscionable to be rendered invalid."  *Chavarria v. Ralphs*

*Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013) (emphasis added) (citing

*Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 690 (Cal. 2000)).

"California law utilizes a sliding scale to determine unconscionability—greater

---

  [9] The court applies California law as the agreement provides.  ECF No. 4-8 at PageID #89 ("If you reside in the United States, these Terms will be interpreted in accordance with the laws of the State of California and the United States of America, without regard to conflict-of-law provisions.").  Further, neither party disputes this choice of law.  *See* ECF No. 9 at PageID #118, 125-27 (noting the agreement will be interpreted under California law, and arguing for unconscionability under California law); ECF No. 4-1 at PageID #35 n.4 (urging this court to apply California law).  Moreover, even if this court applied Hawaii law, the result would be the same—the delegation clause is not unconscionable—because it is not substantively unconscionable.  *See Balogh v. Balogh*, 134 Haw. 29, 41-42, 332 P.3d 631, 643-44 (2014) (requiring similar showings of procedural and substantive unconscionability as California, although recognizing "that, under certain circumstances, an impermissibly one-sided [(i.e., substantively unconscionable)] agreement may be unconscionable even if there is no unfair surprise" (i.e., procedural unconscionability)).

substantive unconscionability may compensate for lesser procedural unconscionability." *Id.* (citing *Armendariz*, 6 P.3d at 690).

For the following reasons, the delegation clause is neither procedurally nor substantively unconscionable.

### 1.      *No Procedural Unconscionability*

In determining whether procedural unconscionability exists, the court looks at "the manner in which the contract was negotiated and the respective circumstances of the parties at that time, focusing on the level of oppression and surprise involved in the agreement." *Id.* Oppression occurs when "the weaker party's absence of choice and unequal bargaining power . . . results in 'no real negotiation.'" *Id.* (quoting *A & M Produce Co. v. FMC Corp.*, 186 Cal. Rptr. 114, 122 (Cal. Ct. App. 1982)). Surprise accounts for "the extent to which the contract clearly discloses its terms as well as the reasonable expectations of the weaker party." *Id.* (citing *Parada v. Super. Ct.*, 98 Cal. Rptr. 3d 743, 757 (Cal. Ct. App. 2009)).

Here, there was no oppression because Plaintiff had the option to refuse the delegation clause itself. Plaintiff argues the delegation clause "was drafted by [Defendant] on a take-it-or-leave-it basis." ECF No. 9 at PageID #127. But the arbitration agreement itself contained a changes provision that allowed

11

Plaintiff the opportunity to reject only the delegation clause while accepting the rest of the terms of service. *See* ECF No. 4-8 at PageID #87.

The 2012 terms of service did not contain a delegation clause. *See* ECF No. 4-7 at PageID #66. But the 2017 terms of service—which applies here—did. *See* ECF No. 4-8 at PageID #87. And both included a changes provision within each dispute resolution section. *See id.* at PageID #88; ECF No. 4-7 at PageID #66. These changes provisions permitted Plaintiff to reject any change to the dispute resolution section after his last acceptance "by sending [Defendant] written notice (including by email) within thirty days." ECF No. 4-8 at PageID #88. If Plaintiff did so, he could have kept the provisions of the last-accepted dispute resolution section. *Id.* That is, Plaintiff could have retained the arbitration agreement *without* the added delegation clause. In short, Defendant did not require Plaintiff to take the delegation clause or leave the entire agreement, and thus there was no oppression. *See, e.g.*, *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1073 (9th Cir. 2007) ("[I]f an employee has a meaningful opportunity to opt out of the arbitration provision when signing the agreement and still preserve his or her job, then it is not procedurally unconscionable.") (applying California law), *abrogated in part on other grounds by Concepcion*, 563 U.S. 333, *as recognized in Ferguson*

*v. Corinthian Colls., Inc.*, 733 F.3d 928, 933 n.2 (9th Cir. 2013); *Selden v. Airbnb, Inc.*, 2016 WL 6476934, at \*8 (D.D.C. Nov. 1, 2016) ("[A]dhesion contracts are not per se unconscionable under California law.") (italics omitted).

There also was no surprise because the delegation clause was neither hidden nor incomprehensible. The very beginning of the 2017 terms of service uses bold print to call attention to the arbitration agreement. *See* ECF No. 4-8 at PageID #68. It asks the user to read the arbitration agreement carefully. *Id.* Next, within the dispute resolution section itself, both the agreement to arbitrate and the delegation clause are also in bold font. *Id.* at PageID #87. The delegation clause plainly designates the arbitrator to decide any disputes over the arbitration agreement's enforceability or application. *See id.*

Because there was no oppression or surprise involved in the delegation clause, there is no procedural unconscionability.

### 2. *No Substantive Unconscionability*

Moreover, even if the delegation clause is procedurally unconscionable (which it is not), it is not substantively unconscionable. An agreement "is substantively unconscionable when it is unjustifiably one-sided to such an extent that it 'shocks the conscience.'" *Chavarria*, 733 F.3d at 923 (quoting *Parada*, 98 Cal. Rptr. 3d at 759). That is, the agreement must be more

than "a simple old-fashioned bad bargain," such that it is "unreasonably favorable to the more powerful party." *Sonic-Calabasas A, Inc. v. Moreno*, 311 P.3d 184, 202 (Cal. 2013) (citations omitted). Such terms include "provisions that seek to negate the reasonable expectations of the nondrafting party, or unreasonably and unexpectedly harsh terms having to do with price or other central aspects of the transaction." *Id.* at 202-03 (citation omitted).

Here, the delegation clause is not unreasonably favorable to Defendant, the more powerful party. The delegation clause clearly and unmistakably binds *both* parties to arbitrate. ECF No. 4-8 at PageID #87; *see Selden*, 2016 WL 6476934, at *8; *see also Sonic-Calabasas A, Inc.*, 311 P.3d at 1152 ("Both California and federal law treat the substitution of arbitration for litigation as the mere replacement of one dispute resolution forum for another, resulting in no inherent disadvantage."). Further, the arbitration agreement caps Plaintiff's initial filing fee at $200. ECF No. 4-8 at PageID #87. By comparison, Plaintiff's filing fee for this action was $400. ECF No. 1-2 at PageID #7. And Plaintiff would be entitled to seek attorney's fees and expenses if he prevails. *Id.* By contrast, Defendant is prohibited from seeking attorney's fees and expenses unless the arbitrator determines that Plaintiff's claim was frivolous or was to

14

harass.  *Id.*; *cf. Long Beach Unified Sch. Dist v. Margaret Williams, LLC*, 256 Cal.

Rptr. 3d 354, 367-68 (Cal. Ct. App. 2019) (finding substantive unconscionability

when an indemnity provision required a company to defend the drafting party and

pay for any meritorious claims the company's owner brought against the drafting

party).

Plaintiff asserts that "the terms in general are unreasonably more

favorable to [Defendant]," without providing specifics.  ECF No. 9 at PageID

#127.  But in fact, the arbitration agreement provides that Plaintiff can select the

hearing location and whether to participate in-person or electronically.  ECF No. 4-

8 at PageID #87.  In these respects, the arbitration agreement is even more

advantageous than a court action.  Therefore, the delegation clause is not

unreasonably favorable to Defendant, the more powerful party, and so it is not

substantively unconscionable.

In sum, the delegation clause is neither procedurally nor substantively

unconscionable.  In so concluding, the court agrees with other courts that have also

upheld Defendant's arbitration provisions.  *See, e.g.*, *Selden*, 2016 WL 6476934, at

*8 (finding that, under California law, an arbitration agreement identical to

Defendant's 2012 terms of service was not procedurally unconscionable because

adhesion contracts are not per se unconscionable, and was not substantively

unconscionable because it subjected both parties to arbitration and defendant

would pay plaintiff's attorney fees unless the claim was frivolous or brought for an

improper purpose); *Plazza v. Airbnb, Inc.*, 289 F. Supp. 3d 537, 557-58 (S.D.N.Y.

2018) (finding the same for procedural unconscionability, despite the terms of

service being "a standard adhesion contract, which does suggest some level of

procedural unconscionability," because the facts "d[id] not rise to the level of

being an unfair surprise or unduly oppressive, such that they warrant invalidation

of the arbitration provision").

　　　　Thus, the delegation clause is enforceable and compels arbitration of

arbitrability, as public policy encourages. *See, e.g.*, *Buckeye Check Cashing, Inc.*

*v. Cardegna*, 546 U.S. 440, 443 (2006) ("[T]he Federal Arbitration

Act . . . embodies the national policy favoring arbitration and places arbitration

agreements on equal footing with all other contracts."); *Sanchez v. Valencia*

*Holding Co.*, 353 P.3d 741, 841 (Cal. 2015) ("California has a 'strong public

policy in favor of enforcing arbitration agreements.'") (Chin, J., concurring)

(quoting *Broughton v. Cigna Healthplans*, 988 P.2d 67, 72 (Cal. 1999)).[10]

## D.     The Court Dismisses the Action

Finally, Defendant asks the court to stay the proceedings pending

arbitration.  In this regard, 9 U.S.C. § 3 provides that if a suit is referable to

arbitration, the court "shall on application of one of the parties stay the trial of the

action until such arbitration has been had in accordance with the terms of the

agreement."  Such a stay, however, is not mandatory if the entire action (as

opposed to only some of the claims) is subject to arbitration.  *See, e.g.*,

*Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1073-74 (9th Cir. 2014)

---

[10] At the March 2, 2020 hearing on the motion, Plaintiff raised two arguments for the first time (i.e., they were not briefed).  First, he argued that an arbitrator in a 2018 proceeding already implicitly ruled that his defamation claim was not arbitrable.  Plaintiff speculated that this was because the final arbitration ruling did not address defamation even though Plaintiff brought it up during the proceeding.  *See generally* ECF No. 4-11 (ruling on several other claims, but not mentioning defamation at all).  But even liberally construed, nothing in the record supports this inference.

Second, Plaintiff asserted that his defamation claim falls within the exception to the arbitration agreement, which permits claims related to intellectual property infringement to be brought in court.  *See generally* ECF No. 4-8 at PageID #87 ("*Exceptions to Arbitration Agreement*. You and Airbnb each agree that the following claims are exceptions to the Arbitration Agreement and will be brought in a judicial proceeding in a court of competent jurisdiction: (i) any claim related to actual or threatened infringement, misappropriation or violation of a party's copyrights, trademarks, trade secrets, patents, or other intellectual property rights . . . .").  But this argument fails even if the court assumes, without deciding, that it can rule on whether the defamation claim falls under this arbitration agreement exception.  Nothing in the Complaint suggests that Plaintiff's defamation claim is related to any intellectual property infringement.  *See* ECF No. 1.

("[N]otwithstanding the language of § 3, a district court may either stay the action or dismiss it outright when . . . the court determines that all of the claims raised in the action are subject to arbitration."); *Thinket Ink Info. Res. Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1060 (9th Cir. 2004) (indicating that a stay is not mandatory and the court may alternatively dismiss those claims that are subject to arbitration); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) ("The weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration.") (citing *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988) (other citations omitted).

Applying these principles, because the Complaint asserts only a single defamation count—a claim subject to the delegation clause of the arbitration agreement—there is no requirement to stay this action. Accordingly, the court DISMISSES the action in lieu of staying it under 9 U.S.C. § 3. If Plaintiff subsequently re-files an action based on this same arbitration claim,[11] the court will waive the filing fee and the matter will be assigned to the undersigned.

---

[11] For example, if the arbitrator rules the defamation claim is not arbitrable, or if Plaintiff seeks to confirm or to vacate an arbitration award regarding the defamation claim.

# IV. **CONCLUSION**

For the foregoing reasons, the court GRANTS Defendant's Motion to Compel Arbitration and DISMISSES the action. The Clerk of Court is directed to close the case file.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 1, 2020.



          /s/ J. Michael Seabright
          J. Michael Seabright
          Chief United States District Judge

*Dunbar v. Airbnb, Inc.*, Civ. No. 19-00648 JMS-WRP, Order Granting Defendant Airbnb, Inc.'s Motion to Compel Arbitration, ECF No. 4, and Dismissing Action